**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| EVAN MASON SPAETH, | : | |
| | : | Civil Action |
| Plaintiff, | : | 06-3447 (WJM) |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| AUDREY PRATT et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

> EVAN MASON SPAETH, plaintiff pro se
> # 902680B
> New Jersey State Prison
> Trenton, New Jersey 08625

**WILLIAM J. MARTINI, District Judge**

Plaintiff EVAN MASON SPAETH (hereinafter "Plaintiff") currently confined at the New Jersey State Prison, Trenton, New Jersey (hereinafter "Facility"), seeks to bring this 42 U.S.C. § 1983 action in forma pauperis without prepayment of fees pursuant to 28 U.S.C. § 1915. Plaintiff submitted his in forma pauperis application, pursuant to 28 U.S.C. § 1915(a) (1998), and Plaintiff's complaint (hereinafter "Complaint"). Plaintiff named the following parties as Defendants in this action: Audrey Pratt, a registered nurse at the Facility; Gerry Dotson, another

Page -1-

registered nurse at the Facility, and Wendy Montgomery, the administrative supervisor of the Nurse Unit.[1]  See Compl. § 4.

## BACKGROUND

At the end of 2005, Plaintiff was suffering of a 2nd degree burn on his arm and hands.[2]  See Compl. at 15, 16 ("Chart Note" Exhibit).  On December 26, 2005, a doctor employed at the Facility ordered to have Plaintiff's wounds "debrided" twice a day.  See Compl. § 6, and at 15.  The "Narrative" section of Plaintiff's Chart Note provided, inter alia, the following instructions with regard to Plaintiff's December 26, 2005, medical procedure: "Nursing to scrub wound with 4X4 and normal saline until the underlying area has bleeding.  The area is to have silvadine applied.  MS 10 mg is to be given with wound care."  Chart Note (Compl. at 15).  The Chart Note further clarified that, as of December 27, 2005, "Bacitracin ointment [was] applied to [the] wounds. . . .  Left arm appear[ed] a lot better. . . .  Wound cleansed vigorously . . . .  [Inmate] tolerated procedure well."

---

[1]  Plaintiff's recent § 1983 complaint against registered nurse Lia Moore based on alleged Moore's mockery of Plaintiff's attempts to commit suicide was dismissed with prejudice on July 17, 2006. See Spaeth v. Moore, 3:06-cv-02684-FLW-JJH (Chesler, J. July 6, 2006).  In addition, Plaintiff was one of the litigants whose complaint was dismissed with prejudice in Inmates at M.C.D.C. v. McManimon, 3:96-cv-04611-GEB (Sep. 26, 1996).

[2]  Neither the date of this injury nor its origin could be discerned from the face of Plaintiff's Complaint or appear to have any relevance to the issue at bar.  See generally, Compl.

Id. at 16.

Plaintiff, who recovered of his wounds, see Compl. § 6, brought the instant action against Defendants asserting that

> [Defendant] Pratt [and Defendant] Dotson[,] both of which are registered nurses[,] did this [December 26, 2005] treatment [of Plaintiff] which they both knew they aren't trained in this specialized area of burn debridment[,] yet they did do it in [the Facility's] medical area[,] but did it unsupervised without a medical doctor or someone properly trained in this area of treatment. And on top of that in a[n] unsanitary way over a trash can full of trash. Which in the end caused [Plaintiff] many infections and many different antibiotics for the infections. . . . As for [Defendant] Montgomery, her being the adm[inistrative supervisor,] she should've . . . put a stop to this treatment.

Id.

## **STANDARD OF REVIEW**

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996). Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous." Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996). A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a

claim, or seek monetary relief from immune defendants.  However, in determining the sufficiency of a complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, lend credit to a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.  Thus, "[a] pro se complaint may be dismissed for failure to state a claim only if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981) (quoting Haines v. Kerner, 404 U.S. 519, 520 (1972)).

## DISCUSSION

Liberally construing Plaintiff's Complaint, the Court reads it as aiming to assert a claim based on Defendants' violations of Plaintiff's Eighth Amendment rights.  Plaintiff's claims, however, do not state a constitutional violation.  While Plaintiff has a protected right in being incarcerated at a place of confinement confirming to the standards set forth by the Eighth Amendment, the Constitution "does not mandate comfortable prisons."  Rhodes v.

Chapman, 452 U.S. 337, 349 (1981).

In its prohibition of "cruel and unusual punishments, the Eighth Amendment . . . imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials . . . must take reasonable measures to guarantee the safety of the inmates." Hudson v. Palmer, 468 U.S. 517, 526-527 (1984), see Helling, 509 U.S. at 31-32; Washington v. Harper, 494 U.S. 210, 225 (1990); Estelle v. Gamble, 429 U.S. 97, 103 (1976). Thus, the Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment. Rhodes, 452 U.S. at 346, 347. The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society." Rhodes, 452 U.S. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958)).

Consequently, to prevail on a medical care claim under the Eighth Amendment, an inmate must show that the defendants were deliberately indifferent to his serious medical needs.[3] See Estelle v. Gamble, 429 U.S. 97; Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999). "Deliberate indifference" exists "where [a]

---

[3] A medical need is serious where it "has been diagnosed by a physician as requiring treatment or is . . . so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." Rouse, 182 F.3d at 197. Furthermore, deliberately delaying necessary medical diagnosis for a long period of time in order to avoid providing care constitutes deliberate indifference that is actionable. See Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993). Deliberate indifference is also evident where officials erect arbitrary and burdensome procedures that result in interminable delays and denials of medical care to suffering inmates. See Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987), cert. denied 486 U.S. 1006 (1998).

However, neither inconsistencies or differences in medical diagnoses, nor refusal to consider inmate's self-diagnoses, to summon the medical specialist of the inmate's choice, to perform tests or procedures that the inmate desires or administer them in the fashion that the inmate prefers or to explain to the inmate the reason for medical action or inaction can amount to cruel and unusual punishment. See White v. Napoleon, 897 F.2d 103 (3d Cir. 1990)(mere disagreements over medical judgment do not state Eighth Amendment claims); Gatewood v. Hendrick, 368 F.2d 179 (3d Cir. 1966), cert. denied, 386 U.S. 925 (1967)(prisoner who did not

claim that he was denied any medical care but rather that he received only inadequate medical care, and gave no indication that he sustained serious physical injury as result of alleged inadequate treatment, failed to state claim for relief); see also Alsina-Ortiz v. Laboy, 400 F.3d 77 (1st Cir. 2005)(a doctor's failure to respond to certain request for services by the inmate, in context of the doctor's continued and regular services, did not deprive the inmate of any meaningful treatment); Jones v. Lockhart, 484 F.2d 1192 (8th Cir. 1973) (allegations of mere differences of opinion over matters of medical judgment fail to state a federal constitutional question); Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970) (a difference of opinion between physician and patient did not sustain a claim under § 1983; the conduct must be so harmful that it should be characterized as a barbarous act that shocked the conscience); Church v. Hegstrom, 416 F.2d 449 (2d Cir. 1969) (mere negligence does not suffice to support a § 1983 action); Goff v. Bechtold, 632 F. Supp. 697 (S.D. W. Va. 1986) (denial of preferred course of treatment does not infringe constitutional rights).

It appears clear from the face of Plaintiff's Complaint and the attached Chart Note that (1) Plaintiff was timely diagnosed, (2) his treatment was promptly administered, and (3) his condition improved.[4]  See Compl. § 6.  While Plaintiff appears to be of

---

[4] While Plaintiff asserts that he suffered infections and had to take antibiotic as a result of Defendants Pratt and Dotson's treatment, this self-diagnosis appears to be pure speculation on

opinion that the nurses administering the treatment were insufficiently trained in saline scrubbing or that they could have performed better scrubbing had they been supervised by a physician and conducted the scrubbing in an operating room, Plaintiff's dissatisfaction with the quality or with the circumstances of his treatment--same as Plaintiff's preference for doctoral supervision or different environment--does not render actions of Defendants Pratt and Dotson deliberately indifferent to Plaintiff's serious medical needs. See White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).

Similarly, Plaintiff failed to state a claim with respect to Defendant Montgomery. In order to state a claim against Defendant Montgomery in her capacity of a supervising official, Plaintiff has to assert that she was deliberately indifferent to a substantial risk of harm to Plaintiff, that is, that she was (1) aware of the risk, yet (2) did not take reasonable measures to abate it. See Farmer v. Brennan, 511 U.S. at 847; Nami v. Fauver, 82 F.3d 63, 67-68 (3d Cir. 1996). In order to satisfy even the first prong of the test, Plaintiff needs either to assert that Defendant Montgomery had actual notice of the risk, Nami, 82 F.3d at 67-8, or to claim that the risk was "longstanding, pervasive, well-

---

the part of Plaintiff insufficient to state a claim under the Eighth Amendment, see Patterson v. Lilley, 2003 U.S. Dist. LEXIS 11097 (S.D.N.Y. June 20, 2003) (defendants could only be held deliberately indifferent to an existing serious medical condition, not a speculative future medical injury), especially in view of Plaintiff being prescribed antibiotic for his wounds ab initio. See Chart Note, Compl. at 16.

documented, or expressly noted by prison officials in the past, and the circumstances suggest that [Defendant Montgomery] had been exposed to information concerning the risk and thus must have known about it." <u>Farmer</u>, 511 U.S. at 842.  Plaintiff, however, neither alleged that the treatment administered by Defendants Pratt and Dotson subjected Plaintiff to a substantial risk of harm, nor asserts that Defendant Montgomery was notified of such risk directly or indirectly.  <u>See</u> <u>generally</u>, Compl.  Therefore, Plaintiff's allegations against Defendant Montgomery do not indicate that she was--or could have been--deliberately indifferent to a substantial risk of harm to Plaintiff.

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiff's Complaint is dismissed with prejudice for failure to state a claim upon which relief may be granted.  An appropriate order accompanies this Opinion.

s/William J. Martini

**WILLIAM J. MARTINI**
**United States District Judge**

Dated: September 11, 2006